UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SELF INITIATED LIVING OPTIONS, INC.,
JUSTIN AINSWORTH, ASA BACON, GINA
BARBARA, and DAVID RODRIGUEZ, and on
behalf of themselves and all others similarly
situated,

                                            Plaintiffs

                    - against -

ZWANGER & PESIRI RADIOLOGY GROUP,
LLP
                                            Defendant

25 Civ. 1104

**COMPLAINT**

**JURY DEMAND**

        Plaintiffs, SELF INITIATED LIVING OPTIONS, INC., A NONPROFIT

ORGANIZATION, JUSTIN AINSWORTH, ASA BACON, GINA BARBARA, AND DAVID

RODRIGUEZ, by and through their counsel, James E. Bahamonde, Esq. from the Law Offices

of James E. Bahamonde, PC, hereby files this Complaint and respectfully alleges against

Defendant:

## NATURE OF THE CASE

1.      Despite a clear statutory mandate that has been in place for more than three decades,

Defendant has neglected their legal obligations under the Americans with Disabilities Act

('ADA') and refused services to persons with physical disabilities because it refused to provide

them with a reasonable accommodation. Defendant has also ignored its legal obligation to

construct, alter and remove architectural barriers at its radiology offices in compliance with the

ADA. These decisions reflect a policy and practice that has prevented the individual Plaintiffs,

along with all others with mobility-related disabilities who cannot walk or stand and rely on wheelchairs and scooters, from having access to and use of Defendant's radiology offices.

2.     These aforementioned breaches have created a two-tier system among Defendant's patients relegating individuals with disabilities to a substandard level of treatment. Therefore, this is not only unlawful discrimination, but also unnecessarily jeopardizes the health and well-being of patients with physical disabilities and significantly impairs their ability to monitor and maintain their own health.

3.     Defendant's ongoing and pervasive pattern of systemic discrimination is common to all of its 23 radiology offices in Nassau and Suffolk counties.

4.     The pervasive and systematic discrimination reflects the lack of proper training of Defendant's employees and agents in dealing with mobility-impaired individuals.

5.     Plaintiffs file this action on behalf of themselves and others similarly situated, complaining of Defendant's violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.*, the Rehabilitation Act, 29 U.S.C. 701 *et seq.*, the Affordable Care Act, 42 U.S.C. § 18001 *et seq.*, New York State Human Rights Law § 296, New York State Civil Rights Law, and Nassau County Administrative Code § 21-9.8 *et seq.*

6.     Plaintiffs seek damages, declaratory and injunctive relief, as well as fees and costs against the Defendant.

## VENUE AND JURISDICTION

7.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiffs' rights under the

Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and Patient Protection and Affordable Care Act ("Affordable Care Act").

8.      The jurisdiction of this court is invoked pursuant to 28 U.S.C. Sections 1331 and 2201 and through the Americans with Disabilities Act, 42 U.S.C.A. § 12181 *et seq.*

9.      The Court has supplemental jurisdiction over Plaintiffs' allegations arising from Defendant's State and local law violations pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, alleged herein, occurred in this District.

### THE PARTIES

11.     Plaintiff Self Initiated Living Options, Inc., a/k/a Suffolk Independent Living Organization ("SILO"), has been providing programs and services to people with disabilities in Nassau and Suffolk Counties since 1985. SILO is a 501(c)(3) not-for-profit, consumer controlled, non-residential, civil rights, mentoring, and educational organization.

12.     Approximately 87 percent of SILO board members and approximately 35 percent of SILO staff are individuals with disabilities. SILO participants and constituents include people with mobility disabilities who would use Defendant's radiology offices if those were accessible.

13.     SILO has long advocated for improving accessibility throughout Long Island and must use its resources to advise persons with physical disabilities, who must contend with Defendant's inaccessible offices and services.

14.     SILO has been injured as a direct result of Defendant's failure to ensure that their public accommodation and programs are accessible to individuals with physical disabilities.

15.     SILO's interest is adversely affected because it must expend resources advocating for individuals with disabilities who are harmed by the policies and practices of Defendant that result in unequal access to Defendant's public accommodation

16.     During all relevant times, Plaintiff Justin Ainsworth is now and has been a resident of Suffolk County, New York. Mr. Ainsworth is paralyzed, cannot stand or walk, and uses a wheelchair for mobility.

17.     During all relevant times, Plaintiff Asa Bacon is now and has been a resident of Nassau County, New York. Mr. Bacon is paralyzed, cannot walk or stand, and uses a wheelchair for mobility.

18.     During all relevant times, Plaintiff Gina Barbara is now and has been a resident of Nassau County, New York. Ms. Barbara has a neurological disability, cannot walk without assistance, and uses a wheelchair for mobility.

19.     During all relevant times, Plaintiff David Rodriguez is now and has been a resident of Suffolk County, New York. Mr. Rodriguez is paralyzed, cannot stand or walk, and uses a wheelchair for mobility.

20.     Defendant Zwanger & Pesiri Radiology Group, LLP is a New York domestic limited liability partnership authorized by the Secretary of the State of New York to do business in New York State.

21.     Defendant owns, operates and leases 23 radiology offices throughout Nassau and Suffolk counties.

**CLASS ACTION**

22.    Plaintiffs bring this suit for declaratory and injunctive relief and, pursuant to F.R.C.P. 23, as a class action for all those similarly situated who have mobility impairments, cannot stand or walk, and must rely upon the use of wheelchairs or scooters and use, or desire to use, the services and accommodations offered to the public by Defendant, and are protected by, and are beneficiaries of federal, state and local laws.

23.    Plaintiffs, complaining for themselves and all other residents in the State of New York, similarly situated, alleges: (a) the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable; (b) there are questions of law or fact common to the class which predominate over any questions affecting only individual members; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (d) the representative parties will fairly and adequately protect the interests of the class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**STATUTORY SCHEME**

24.    The Americans with Disabilities Act, the Rehabilitation Act of 1973, the Affordable Care Act, and New York State Human Rights Laws recognize individuals with disabilities as a protected class. As such, it is unlawful for a private entity that owns, leases to or operates a place of public accommodation to discriminate against an individual with a disability.

25.    The United States Census Bureau indicates that more than 300,000 persons residing in Nassau and Suffolk counties have a disability.

5

26.     Congress has found that historically, society has tended to isolate and segregate individuals with disabilities, and that this discrimination continues to be a serious and pervasive problem.

27.     Individuals with disabilities continually encounter various pervasive forms of discrimination from medical providers, including outright intentional exclusion, the discriminatory effects of architectural barriers, overprotective rules and policies, failure to train personnel, or make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, or other opportunities.

28.     Often, the lack of training received by medical providers as well as not having the proper equipment to serve people with mobility disabilities may cause doctors and other medical providers to forgo, omit, or not recommend procedures, or portions of procedures for people with disabilities that would otherwise be commonplace.

29.     A medical provider is required to provide medical services in an accessible manner. Consequently, a medical provider must have accessible exam rooms, examination tables, medical equipment, and scales.

30.     A medical provider is also required by law to make reasonable modifications in their policies, practices, and procedures to avoid discrimination on the basis of disability.

31.     Additionally, a medical provider must give a person with a disability a benefit or service that is about as effective as what is provided to a person without a disability. For instance, a medical provider cannot condition the provision of medical services by demanding a disabled

6

patient to bring a third party to assist that patient. The patient with a disability, just like other individuals, may come to an appointment alone, and the medical provider must give reasonable assistance to enable the individual to receive medical care.

32.    The required reasonable assistance may include helping the patient to undress and get dressed, to get on and off the exam table or other equipment, and lie back and be positioned on the examination table or other equipment. Once on the exam table, a medical provider is required, as needed, to help a disabled patient maintain their balance and positioning.

33.    A medical provider is lawfully required to provide training to its staff on proper handling techniques as necessary to provide a patient with a disability with medical services that are equal to that of a patient without a disability.

34.    As such, it is unlawful for a private entity that owns, leases to or operates a place of public accommodation to discriminate against an individual with a disability.

35.    Under the ADA and New York State Human Rights Law, both the landlord who owns the building that houses a place of public accommodation, and the tenant who owns or operates the place of public accommodation, are vicariously liable and cannot escape culpability because of the other's failure to comply with the ADA or New York State Human Rights Law.

36.    A medical provider must provide a benefit or service to a disabled person that is as effective as what is provided to able-bodied individuals.

37.    The ADA and New York State Human Rights Law also require a public accommodation to be readily accessible to and usable by a disabled individual.

38.    Construction and accessibility alterations made on or after March 15, 2012, must comply

7

with the 2010 ADA Standards for Accessible Design. *See* 28 CFR Part 36 Subpart D and ADA Accessibility Guidelines, 36 C.F.R. Part 1191 Appendices B and D. (The 2010 ADA Standards for Accessible Design are hereinafter referred to as "2010 Standards").

39.     Construction and accessibility alterations commenced after January 26, 1992, and before September 15, 2010, must comply with the 1991 ADA Accessibility Standards. *See*, 28 CFR Part 36 Appendix A. (The 1991 ADA Accessibility Standards are hereinafter referred to as "1991 Standards").

40.     Where a public accommodation undertakes an alteration that affects, or could affect, usability of, or access to, the public accommodation, it must implement accessibility alterations to the maximum extent feasible so that the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area are readily accessible to, and usable by, individuals with disabilities, including the path of travel from the sidewalk to the entrance.

41.     Public accommodations have a continuous legal obligation to remove all readily achievable barriers which denies a disabled individual with the opportunity to participate in or benefit from services or accommodations.

42.     Failure to construct or remove all readily achievable architectural barriers is defined as disability discrimination in violation of the ADA and New York State Human Rights Law.

43.     Discriminatory intent is not required to establish liability under Title III of the ADA, or is it necessary in establishing whether a defendant failed to make reasonable modifications to the policies, practices, or procedures to afford equal access to persons with disabilities.

8

## PLAINTIFFS' ALLEGATIONS

44.    Plaintiff Justin Ainsworth cannot walk and must use a wheelchair for mobility. He is a qualified individual with a disability within the meaning of all applicable statutes.

45.    Plaintiff Asa Bacon cannot walk and uses a wheelchair for mobility. He is a qualified individual with a disability within the meaning of all applicable statutes.

46.    Plaintiff Gina Barbara cannot walk and uses a wheelchair for mobility. She is a qualified individual with a disability within the meaning of all applicable statutes.

47.    Plaintiff David Rodriguez cannot walk and uses a wheelchair for mobility. He is a qualified individual with a disability within the meaning of all applicable statutes.

48.    Upon information and belief, Defendant Zwanger & Pesiri Radiology Group, LLP owns or leases the commercial property which houses the public accommodation named Zwanger & Pesiri Radiology Group (hereinafter "public accommodation").

49.    Defendant Zwanger & Pesiri Radiology Group, LLP owns and operates radiology offices located at:

      a.    625 Rockway Turnpike, Lawrence, NY 11559.

      b.    399 Old Country Rd., Carle Place, NY 11514.

      c.    126 Hicksville Rd., Massapequa, NY 11758.

      d.    680 Old Country Rd., Plainview, NY 11803.

      e.    160 Brentwood Rd., Bayshore, NY 11706.

      f.    1018 Suffolk Ave., Brentwood, NY 11717.

      g.    763 Lark Field Rd., Commack, NY 11725.

h.      347 Middle Country Rd., Coram, NY 11727.

i.      2087 Deer Park Ave., Deer Park, NY 11729.

j.      220 Belle Mead Road, East Setauket, NY 11733

k.      326 Walt Whitman Rd, Huntington Station, NY 11746.

l.      150 E. Sunrise Hwy., Lindenhurst, NY 11757.

m.      1729 N Ocean Ave, Medford, NY 11763.

n.      285 Sills Road, Patchogue, NY 11772.

o.      4 Medical Drive, Port Jefferson Station, NY 11776.

p.      5650 Sunrise Hwy Sayville, NY 11782.

q.      801 Montauk Hwy, Shirley, NY 11967.

r.      80 Maple Ave., Smithtown, NY 11787.

s.      987 W Jericho Turnpike, Smithtown, NY.

t.      2500 Nesconset Hwy, Bldg. 15, Stony Brook 11790.

u.      6144 Route 25A, Wading River, NY 11792.

v.      759 Montauk Hwy., West Islip, NY 11795.

50.     Upon information and belief, since January 26, 1993, Defendant has failed to design and construct its radiology offices in compliance with the ADA.

51.     It is not structurally impractical for Defendant's radiology offices to meet the design and construction requirements of the ADA.

52.     Upon information and belief, since 1992, Defendant's radiology offices have undergone alterations to the areas which affect, or could affect, access to, or usability of, its

place of public accommodation.

53.     Upon information and belief, Defendant has made alterations to its radiology offices on or after March 15, 2012.

54.     Since March 15, 2012, Defendant has made alterations to the walks and sidewalks, curb ramps and other interior or exterior pedestrian ramps; clear floor paths through lobbies, corridors, rooms, and other improved areas; parking access aisles; elevators and lifts; and the restrooms of its radiology offices in Nassau and Suffolk counties.

**JUSTIN AINSWORTH**

55.     In or about November 2023, Mr. Ainsworth called Defendant Zwanger Radiology to schedule an appointment for an MRI at their office located at 1729 N Ocean Ave, Medford, NY. Mr. Ainsworth identified his physical disability and inability to self-transfer and requested a reasonable accommodation to assist transferring onto the MRI table. Defendant's representative informed Mr. Ainsworth that they could not provide any physical assistance to the transfer. When Mr. Ainsworth inquired about the availability of a transfer assist device at either the Medford office or any other Zwanger office, the agent replied, "no," and informed Mr. Ainsworth that if he did not bring someone to assist him, they would not be able to conduct the MRI.

56.     Left with no alternative, Mr. Ainsworth did not schedule the MRI.

**ASA BACON**

57.     In or about August 2024, Mr. Bacon called Defendant Zwanger Radiology to schedule an appointment for a CAT scan at their office located at 126 Hicksville Rd., Massapequa, NY

11

11758. Mr. Bacon identified his physical disability and inability to self-transfer and requested a reasonable accommodation to assist transferring onto the CAT scan table. In response, Defendant's representative informed Mr. Bacon that they could not provide any physical assistance. The representative further informed Mr. Bacon that if he did not bring someone to assist him, they would not be able to conduct a CAT scan at any of their offices in Nassau County.

58.     Left with no other alternative, Mr. Bacon did not schedule an appointment for CAT scan.

59.     Features of Defendant's Massapequa radiology office that are inaccessible to Mr. Bacon, and others similarly situated, include but are not limited to:

a.     Parking spaces did not have the necessary identification size in violation of the 2010 Standards 502.6;

b.     An accessible route of 36 inches is not provided from accessible parking spaces to Defendant's entrance in violation of the 1991 Standards § 4.3.2 and 4.3.3; 2010 Standards § 206.2.1.

c.     There are not a sufficient number of accessible parking spaces in violation of the 2010 Standards § 208.

d.     Several parking spaces did not have the necessary access aisles in violation of the 2010 Standards § 502.3.

e.     The access aisles of several designated accessible parking spaces did not have a curb ramp and were not connected to an accessible route;

f.      The markings of the parking spaces and access aisles have not been maintained. Therefore, they are not easily identifiable in violation of the 2010 Standards 502.3.3.

g.       In the waiting room, there is insufficient space for Mr. Bacon to park his wheelchair. There is no designated area for wheelchairs, or is there enough space for an individual in a wheelchair to park while waiting. As a result, individuals in wheelchairs have to position themselves in the aisle and path of travel of other patients.

## GINA BARBARA

60.    In or about 2023, Ms. Barbara called Defendant Zwanger Radiology to schedule an appointment for a CAT scan at their office located at 126 Hicksville Rd., Massapequa, NY 11758. Ms. Barbara identified her physical disability and inability to self-transfer and requested a reasonable accommodation to assist transferring onto the CAT scan table. In response, Defendant's representative informed Ms. Barbara that they could not provide any physical assistance to transfer. Defendant's representative further informed Ms. Barbara that if she did not bring someone to assist her, they would not be able to conduct a CAT scan.

61.    Accordingly, Ms. Barbara did not schedule an appointment with Defendant Zwanger.

## DAVID RODRIGUEZ

62.    In November 2024, Mr. Rodriguez called Defendant Zwanger Radiology to schedule an appointment for a CAT scan at their office located at 150 E. Sunrise Hwy., Lindenhurst, NY 11757. Mr. Rodriguez identified his physical disability and inability to self-transfer and requested a reasonable accommodation to assist transferring onto the table. In response, Defendant's representative informed Mr. Rodriguez that they could not provide any physical

13

assistance to transfer onto the CAT scan table. Defendant's representative further informed Mr. Rodriguez that if he did not bring someone to assist him, they would not be able to conduct a CAT scan.

63.     Left with no alternative, Mr. Rodriguez sought the assistance of a family member to accompany him to his appointment in order to assist him with transferring him onto the CAT scan table.

64.     Access to the main entrance door requires ascending a series of steps. Therefore, Mr. Rodriguez had to use a ramp located at the rear entrance of the building.

**Radiology Office in Lindenhurst**

65.     Features of Defendant's Lindenhurst radiology office that are inaccessible to the individual Plaintiffs, and others similarly situated, include, but are not limited to:

    a.     Upon information and belief, the closing speed of the main entrance door is more than 5 seconds in violation of the 2010 Standards § 404.2.8.

    b.     Ramp handrails do not extend horizontally above the landing for 12 inches minimum beyond the bottom of the ramp run in violation of 2010 Standards §505.10.1.

    c.     There is no signage at the main entrance indicating the accessible entrance and ramp is located at the rear of the building.

    d.     The public-access bathroom's door opens into the bathroom taking away clear floor space in violation of the 2010 Standards 603.2.3.

    e.     In the waiting room, there is insufficient space for Mr. Rodriguez to park his wheelchair. There is no designated area for wheelchairs, or is there enough space for an

individual in a wheelchair to park while waiting. As a result, Mr. Rodriguez had to position his wheelchair in the aisle and path of travel of other patients.

f.      The entrance door to the bathroom is less than 32 inches wide in violation of the 1991 And 2010 Standards.

g.      The public access bathroom does not have sufficient clear floor space. The floor space available is less than 48 inches wide and 56 inches long in violation of 1991 Standards § 4.16.2, and less than 56 inches minimum measured perpendicular from the rear wall and 60 inches minimum measured perpendicular from the sidewall in violation of the 2010 Standards § 604.3.

h.      There is insufficient maneuvering clearance to exit Defendant's public access bathroom in violation of 1991 Standards § 4.13.6; 2010 Standards § 404.2.4.

i.      The centerline of the toilet in the bathroom is not 16 inches minimum to 18 inches maximum from the side wall in violation of 2010 Standards § 604.2.

j.      There are no sidewall or rear wall grab bars surrounding the toilet in violation of the 1991 and 2010 Standards.

k.      The toilet paper dispenser is more than 9 inches in front of the toilet in violation of the 2010 Standards § 604.7.

l.      The bathroom sink is inaccessible in violation of the 1991 Standards § 4.19; 2010 Standards § 606.

m.      There is no clear floor space to access the bathroom sink in violation of the 1991 Standards §§ 4.19, 4.24.5 and 2010 Standards § 606.2.

15

n.      The sink does not have any knee clearance in violation of 1991 Standards 4.24.5; 2010 Standards 3 or 6.3.

o.      The bathroom mirror is mounted at an inaccessible height.

p.      The bathroom soap dispenser is mounted at an inaccessible height. There is also no clear floor space to access the soap dispenser.

q.      The height of the toilet is not 17 inches to 19 inches, measured to the top of the toilet, as required by the 1991 Standards and 2010 Standards.

r.      Upon information and belief, the dressing room available to patients does not have sufficient wheelchair clear floor space or maneuvering clearance.

**Radiology Office in Plainview**

66.      Features of Defendant's Plainview radiology office that are inaccessible to the individual Plaintiffs, and others similarly situated, include but are not limited to:

a.      designated accessible parking spaces are not located on the shortest accessible route from the parking lot to the entrance to the radiology office;

b.      designated accessible parking spaces are not located on relatively level ground;

c.      designated accessible parking spaces are not identified with signage;

d.      the curb ramp connecting the parking lot to the sidewalk abutting Defendant's office is too steep. The cross and running slope of the ramp are excessive, which increases the risk of a wheelchair user losing their balance and falling;

e.      there is no designated seating area in the office's waiting room for a disabled person who uses a wheelchair to park their wheelchair. As a result, individuals in

wheelchairs must position themselves in the aisle and path of travel of other patients.

**Radiology Office in Deer Park**

67.    Features of Defendant's Deer Park radiology office that are inaccessible to the individual Plaintiffs, and others similarly situated, include but are not limited to:

a.    the designated accessible parking space has incorrect dimensions;

b.    the designated accessible parking space is not located on relatively level ground;

c.    the curb ramp adjoining the designated accessible parking space to the sidewalk leading to the front entrance of the office is too steep. The cross and running slope of the ramp are excessive, which increases the risk of a wheelchair user losing their balance and falling;

d.    there are many large gaps in the sidewalk leading to the entrance in violation of 2010 Standard 302.3;

e.    the cross and running slope of the sidewalk leading to the entrance are excessively steep in violation of 2010 Standards 403.3;

f.    There is no designated seating area in the office's waiting room for a disabled person who uses a wheelchair to park their wheelchair. As a result, individuals in wheelchairs must position themselves in the aisle and path of travel of other patients.

f.    Defendant has placed an array of seats in front of the interior entrance door. As a result, there is insufficient maneuvering clearance for an individual in a wheelchair or scooter to open the door and enter.

g.    Defendant has placed a watercooler against the wall outside the public access

bathroom's door, which blocks the required maneuvering clearance to access the bathroom door;

h.      the bathroom door opens into the bathroom and takes away the required clear floor space, in violation of the 2010 Standards 603.2.3.

i.      the bathroom mirror is mounted at an inaccessible height; consequently, an individual in a wheelchair cannot see their reflection in the mirror;

j.      the bathroom soap dispenser is mounted at an inaccessible height; the coat hook mounted on the bathroom door is at an inaccessible height making it impossible, for a person in a wheelchair to reach the coat hook;

k.      the garbage receptacle in the bathroom occupies the required clear floor space;

**Radiology Office in West Islip**

**Mammography/X-ray/Sonogram Office**

68.      Features of Defendant's West Islip mammography/x-ray/sonogram office that are inaccessible to the individual Plaintiffs, and others similarly situated, include, but are not limited to:

a.      the access aisles of designated accessible parking spaces have improper dimensions;

b.      designated accessible parking spaces are not identified with signage;

c.      the landing of the ramp at the mammography/x-ray/sonogram office does not meet the minimum dimension requirements specified in the 2010 Standards 405.7.4, making it challenging, if not impossible, for a wheelchair user to change direction.

d.      the ramp violates 2010 Standards 405.9 due to the lack of the required edge

protection;

e.      there is insufficient maneuvering clearance to open the door at the entrance of

the mammography/x-ray/sonogram office. Consequently, a wheelchair user does not

have sufficient maneuvering clearance to open the door;

**MRI Office**

f.      there is insufficient maneuvering clearance for a person in a wheelchair or

scooter to open the entrance door at the MRI office;

g.      the public-access bathroom's door opens into the bathroom and takes away the

required clear floor space, in violation of the 2010 Standards 603.2.3;

h.      the coat hook mounted on the bathroom door is at an inaccessible reach range;

i.      the plumbing pipes located under the bathroom sink are not wrapped, which

increases the risk of burns to an individual in a wheelchair;

j.      the garbage receptacle set on the floor of the bathroom restricts the required

clear floor space.

**Radiology Office in Brentwood**

69.     Features of Defendant's Brentwood radiology office that are inaccessible to the

individual Plaintiffs, and others similarly situated, include but are not limited to:

a.      Designated accessible parking spaces are not identified with signage;

b.      the curb ramp does not have a landing, in violation of 2010 Standards 405.7.4,

making it challenging, if not impossible, for a wheelchair user to use the curb ramp and

change direction;

**Radiology Office in Coram**

70.     Features of Defendant's Coram radiology office that are inaccessible to the individual Plaintiffs, and others similarly situated, include but are not limited to:

    a.     a designated accessible parking space is not identified with signage;

    b.     several designated accessible parking spaces are not located on the shortest accessible route from parking to the entrance to the radiology office;

    c.     the curb ramp in the office's parking lot is too steep. The cross and running slope of the ramp are excessive, which increases the risk of a wheelchair user losing their balance and falling;

    d.     several designated accessible parking spaces do not have, or are not located immediately adjacent to a bcurb ramp;

    e.     several designated accessible parking spaces are not located on relatively level ground.

**Radiology Office in Medford**

71.     Features of Defendant's Medford radiology office that are inaccessible to the individual Plaintiffs, and others similarly situated, include but are not limited to:

    a.     the curb ramp adjoining the parking space to the sidewalk leading to the front entrance of the office has excessive changes of levels and has large enough gaps opening into the , which makes it challenging, if not impossible, for a wheelchair user to use the curb ramp;

b.    the entrance to the Medford office has 2 doors in series. The thresholds to both entrance doors are excessively high, making it difficult, if not impossible for a wheelchair user to traverse over;

c.    there is no designated seating area in the office's waiting room for a disabled person who uses a wheelchair to park their wheelchair. As a result, individuals in wheelchairs must position themselves in the aisle and path of travel of other patients.

d.    the bathroom mirror is mounted at an inaccessible height;

e.    the bathroom soap dispenser is mounted at an inaccessible height; the height of the toilet seat is lower than 17 inches; the lower height makes it difficult for a wheelchair user to transfer onto the toilet;

f.    There does not exist any clear floor space for an individual in a wheelchair to access the bathroom sink in violation of the 1991 Standards §§ 4.19, 4.24.5 and 2010 Standards § 606.2.

g.    The bathroom sink also does not have any knee clearance for a person in a wheelchair and therefore, is inaccessible in violation of the 1991 Standards §§ 4.19, 4.24. and 2010 Standards § 606.

h.    The sink does not have any knee clearance in violation of 1991 Standards 4.24.5.

**Radiology Office in East Setauket**

72.    Features of Defendant's East Setauket radiology office that are inaccessible to the individual Plaintiffs, and others similarly situated, include but are not limited to:

a.    several designated accessible parking spaces are not identified with signage;

21

b.      the curb ramp does not have a landing, in violation of 2010 Standards 405.7.4, making it challenging, if not impossible, for a wheelchair user to use the curb ramp and change direction;

c.      the curb ramp and its side flares project into the parking spaces and access aisles, in violation of 2010 Standards 406.5.

**Radiology Office in Stony Brook**

73.     Features of Defendant's Stony Brook radiology office that are inaccessible to the individual Plaintiffs, and others similarly situated, include but are not limited to:

a.      several designated accessible parking spaces are not identified with signage;

b.      pipes under the bathroom sink are not wrapped placing a wheelchair user at risk for burns.

74.     For all of Defendant's offices above, the removal of existing architectural barriers is readily achievable.

75.     Defendant has failed to remove the existing architectural barriers at its radiology offices.

76.     The individual Plaintiffs are deterred from visiting Defendant's public accommodation because of the existing accessibility barriers.

77.     Once Defendant makes their radiology offices readily accessible and usable, the individual Plaintiffs will not hesitate to make an appointment to obtain radiology services at their office.

## FIRST CAUSE OF ACTION

### (Violations of the Americans with Disabilities Act)

(Injunctive Relief on Behalf of all Plaintiffs)

78.  The individual Plaintiffs are qualified individuals with a disability as that term is defined by the ADA.

79.  Defendant's radiology offices in Nassau and Suffolk counties are public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181; 28 C.F.R. § 36.104.

80.  The radiology offices owned and operated by Defendant are considered public accommodations as defined in Title III of the ADA, 42 U.S.C. § 12181; 28 C.F.R. § 36.104.

81.  Since January 1992, each of Defendant's public accommodation has undergone alterations to the areas which affects or could affect access to or usability of its place of public accommodation.

82.  Since March 15, 2012, each of Defendant's public accommodation has undergone alterations to the areas which affects or could affect access to or usability of its place of public accommodation.

83.  The primary function of Defendant's public accommodation is radiology services.

84.  Defendant failed to ensure that, to the maximum extent feasible, the path of travel to the altered area and the restrooms serving the altered area, are readily accessible to and usable by individuals with disabilities.

85.  Defendant failed to make alterations to their public accommodation pursuant to the 1991 Standard and 2010 Standard.

86.  Each of Defendant's public accommodation was first occupied after January 26, 1993.

23

87.     Defendant failed to make alterations at their radiology offices in such a manner that, to the maximum extent feasible, the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities in violation of 42 U.S.C. § 12183(a)(2).

88.     It is not impossible for Defendant to remove the architectural barriers which exist at its radiology offices.

89.     Each of Defendant's public accommodations are not fully accessible to, or readily useable by individuals with mobility disabilities and use wheelchairs or scooters.

90.     Defendant has discriminated against Plaintiffs, and all others similarly situated, on the basis of disability, in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its public accommodation in violation of 42 U.S. C. § 12182(a).

91.     Defendant has subjected Plaintiffs, and all others similarly situated, on the basis of disability, directly, or through contractual, licensing, or other arrangements, denial of the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Defendant in violation of 42 U.S.C. § 12182(b)(1)(A)(i).

92.     Defendant has afforded Plaintiffs, and all others similarly situated, on the basis of disability, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals in violation of 42 U.S.C. § 12182(b)(1)(A)(ii).

93.     Defendant has provided Plaintiffs, and all others similarly situated, on the basis of disability, directly, or through contractual, licensing, or other arrangements with a good, service,

facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals in violation of 42 U.S.C. § 12182(b)(1)(A)(ii).

94.     Defendant has not afforded Plaintiffs, and all others similarly situated, the goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate in violation of 42 U.S.C. § 12182(b)(1)(B).

95.     Defendant has denied Plaintiffs, and all others similarly situated, the opportunity to participate in such program or activities that is not separate or different in violation 42 U.S.C. § 12182(b)(1)(C).

96.     Defendant has imposed or applied an eligibility criteria that screened out, or tended to screen out, Plaintiffs, and all others similarly situated, from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations being offered in violation of 42 U.S.C. § 12182(b)(2)(A)(i).

97.     Defendant has failed to make reasonable modifications in their policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to Plaintiffs in violation of 42 U.S.C. § 12182(b)(2)(A)(ii).

98.     Defendant has failed to remove all architectural barriers that are structural in violation of 42 U.S.C. § 12182(b)(2)(A)(iv).

99.     Defendant should have achieved accessibility by January 26, 1992.

100.    The barriers to access Defendant's radiology offices continue to exist.

101.    Reasonable modifications exist which do not impose an undue hardship on the operation

of the Defendant's program or activity.

102.    Reasonable modifications could be made which do not fundamentally alter the nature of the Defendant's program or activity.

103.    The removal of existing architectural barriers is readily achievable.

## SECOND CAUSE OF ACTION
### (Violations of the Rehabilitation Act)
(Injunctive Relief and Damages on Behalf of the individual Plaintiff)

104.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

105.    Defendant employs 15 or more people.

106.    Defendant is a recipient of federal financial assistance as that term is defined by the Rehabilitation Act.

107.    Upon information and belief, Defendant has failed to perform a self-evaluation of its current policies and practices and the effects thereof to determine whether it does or does not meet the requirements of the Rehabilitation Act.

108.    On the basis of each individual Plaintiff's disability, Defendant has denied the collective individual Plaintiffs the opportunity to participate in or benefit from the aid, benefit, or service.

109.    On the basis of disability, Defendant did not afford the individual Plaintiffs an opportunity to participate in or benefit from the aid, benefit, or service that is equal to that afforded others.

110.    On the basis of disability, Defendant denied the individual Plaintiffs with the aid, benefit, or service that is as effective as that provided to others.

111.    Defendant provided different or separate aid, benefit, or service to the individual Plaintiffs, and all others similarly situated.

112.    Defendant utilized a criteria or method of administration that has the effect of excluding the individual Plaintiffs, and all others similarly situated, on the basis of their disability, from denying them the benefit of, or otherwise subjecting them to discrimination.

113.    Defendant has failed to operate its program or activity that is accessible to Plaintiffs, and all others similarly situated, in compliance with the Rehabilitation Act.

114.    On the basis of disability, Defendant has failed to provide meaningful access to its benefits, programs, or services.

115.    As a direct and proximate result of the disability discrimination perpetrated by Defendant in violation of the Rehabilitation Act, the individual Plaintiffs have suffered damages for loss of an opportunity

### THIRD CAUSE OF ACTION
### (Violation of the Affordable Care Act)
(Injunctive Relief and Damages on Behalf of the Individual Plaintiffs)

116.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

117.    The individual Plaintiffs are qualified individuals with a disability as that term is defined by the Affordable Care Act.

118.    Defendant is a recipient of federal financial assistance as that term is defined by the Affordable Care Act.

119.    During all relevant times, Defendant is principally engaged in the business of

providing health care.

120.    Under Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

121.    Defendant has discriminated against Plaintiffs, and all others similarly situated, on the basis of disability, in violation of 42 USC 18116(a).

122.    Defendant has discriminated against Plaintiffs, and all others similarly situated, for failing to make reasonable modifications to its policies, practices, or procedures in violation of the Affordable Care Act and its implementing regulations.

123.    Reasonable modifications to Defendant's policies, practices, or procedures are necessary to avoid discrimination on the basis of disability in violation of the Affordable Care Act.

124.    As a direct and proximate result of the disability discrimination perpetrated by Defendant in violation of the Affordable Care Act, the individual Plaintiffs have suffered damages for a lost opportunity.

**FOURTH CAUSE OF ACTION**
**(Violations of New York State Human Rights Law)**
(Injunctive Relief and Damages on Behalf of Plaintiffs)

125.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

126.     Plaintiffs are an individual with a disability as that term is defined by New York State Human Rights Law.

127.     Defendant Zwanger & Pesiri Radiology Group, LLP owns, operates, or leases a public accommodation, 23 offices in Nassau and Suffolk counties, within the meaning of New York State Human Rights Law § 292(9).

128.     Defendant has refused to make a reasonable modification in their policy, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to Plaintiffs in violation of New York State Human Rights Law § 296.2(a) and 296.2(c)(i).

129.     Necessary reasonable modifications exist, which do not fundamentally alter the nature of such facilities, privileges, advantages or accommodations.

130.     Defendant has not provided Plaintiffs and others similarly situated with evenhanded treatment in violation of New York State Human Rights Law § 296.

131.     Defendant's direct or indirect uneven treatment of Plaintiffs and others similarly situated is demonstrated when it segregates Plaintiffs, and others similarly situated, from all other patients.

132.     Defendant has, because of each individual Plaintiffs' disability, directly or indirectly, refused, withheld from or denied Plaintiffs any of the accommodations, advantages, facilities or privileges of their public accommodation.

133.     Defendant has demonstrated that the patronage or custom thereat of Plaintiffs and others similarly situated, is unwelcome, objectionable or not acceptable, desired or solicited.

134.    Defendant and its agents discriminated against Plaintiffs in violation of New York State Human Rights Law § 296.

135.    Defendant discriminated against Plaintiffs by creating, fostering, and otherwise failing to prevent or remedy the discrimination against Plaintiffs, in violation of New York State Human Rights Law § 296.

136.    As a direct and proximate result of the disability discrimination perpetrated by Defendant in violation of the New York State Human Rights Law, the individual Plaintiffs have suffered and continue to suffer physical pain, emotional distress -- including but not limited to the increase of blood sugar levels and blood pressure, migraine headaches and attendant bodily injury, violently ill, vomiting, humiliation, stress, embarrassment, anxiety, loss of self-esteem and self-confidence, loss of dignity, physical and emotional pain, and otherwise sustained injury.

### FIFTH CAUSE OF ACTION
**(Violation of New York State Civil Rights Law)**
(Statutory Damages on Behalf of Plaintiffs)

137.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

138.    On the basis of Plaintiffs' disability, Defendant has violated their Civil Rights.

139.    Consequently, Plaintiffs are entitled to recover the penalty prescribed by Civil Rights Law § 40-c and 40-d, in the amount of $500 for each and every violation.

140.    Pursuant to NY Civil Rights law, Defendant is guilty of a class A misdemeanor.

141.    Notice of this action has been served upon the Attorney-General as required by Civil

Rights Law § 40-d.

## SIXTH CAUSE OF ACTION
(Violations of Nassau County Administrative Code)
(*Injunctive Relief and Damages on Behalf of SILO, Asa Bacon, and Gina Barbara*)

142.    Plaintiffs reallege and incorporate by this reference all allegations set forth in this Complaint as if fully set forth herein.

143.    Plaintiffs are individuals with a disability as that term is defined by Nassau County Administrative Code.

144.    Defendant has demonstrated that at its Nassau County office locations, its accommodation, advantages, facilities and privileges shall be refused, withheld from or denied to Plaintiffs and all others similarly situated on account of actual or perceived disability.

145.    On the basis of Plaintiffs' disability, Defendant demonstrates that the patronage of Plaintiffs is unwelcome, objectionable, or not acceptable, desired or solicited.

146.    On the basis of the individual Plaintiffs' disability, Defendant has directly or indirectly, refused, withheld from or denied Plaintiffs with similar accommodations, advantages, facilities or privileges as offered to individuals who are not disabled.

## SEVENTH CAUSE OF ACTION
(Declaratory Relief)

147.    Plaintiffs reallege and incorporate by this reference all allegations set forth in this Complaint as if fully set forth herein.

148.    Plaintiffs are entitled to a declaratory judgment concerning the violations committed by Defendant specifying the rights of Plaintiffs and other persons similarly situated as to the

policies, practices, procedures, facilities, goods and services provided by Defendant.

## INJUNCTIVE RELIEF

149.    Plaintiffs and others similarly situated will continue to experience unlawful discrimination as a result of Defendant's failure to comply with Title III of the ADA, the Rehabilitation Act, Affordable Care Act, New York State Human Rights Law, New York State Civil Rights Law, Nassau County Administrative Code, therefore, injunctive relief is necessary to order Defendant to alter and modify their facility, policies, practices, and procedures.

150.    Plaintiffs seek that the Court issues a permanent injunction enjoining Defendant from disability discrimination; requiring Defendant to alter its facility to make such facility readily accessible to and usable by individuals with disabilities, and make all necessary modifications to Defendant's policies or practices so that Plaintiffs and other persons similarly situated will not be subject to further unlawful discrimination.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that the Court entered a judgment in their favor containing the following relief:

A.      Enter a declaratory judgment specifying Defendant's conduct as alleged here has violated, and continues to violate, Title III of the ADA, the Rehabilitation Act, Affordable Care Act, New York State Human Rights Law, New York State Civil Rights Law, Nassau County Administrative Code, and its implementing regulations and declaring the rights of Plaintiffs and other persons similarly situated as to the policies, practices, procedures, facilities, goods and services offered by Defendant to the public.

B.      Issue a permanent injunction 1) proscribing disability discrimination, 2) requiring Defendant to alter its public accommodation making such public accommodation readily accessible to and usable to individuals with disabilities, 3) compelling Defendant to adopt a policy and procedure to handle requests for reasonable accommodations; and 4) compelling Defendant to make all necessary modifications to Defendant's policies or practices so that Plaintiffs will not be subject to further discrimination, in accordance with Title III of the ADA, the Rehabilitation Act, Affordable Care Act, New York State Human Rights Law, New York State Civil Rights Law, Nassau County Administrative Code.

C.      Award Plaintiffs damages for Defendant's violation of the Rehabilitation Act and Affordable Care Act.

D.      Award Plaintiffs actual damages as a result of Defendant's discrimination in violations of New York State Human Rights Laws.

E.      Award Plaintiffs compensatory damages as result of Defendant's discrimination in violation of New York State Human Rights Laws.

F.      Pursuant to New York State Civil Rights Law § 40-c and 40-d, hold Defendant liable for $500 for *each* violation.

G.      Pursuant to New York State Civil Rights Law § 40-d, find Defendant guilty of a class A misdemeanor for violating New York State civil rights law.

H.      Award Plaintiffs SILO, Asa Bacon, and Gina Barbara the mandatory, minimum statutory damages of $5000 from Defendant for their violations of Nassau County Administrative Code § 21-9.8.

I.      The Court retain jurisdiction over the Defendant until the Court is satisfied that the Defendant's unlawful practices, acts and omissions no longer exist and will not reoccur.

J.      Find that Plaintiffs are a prevailing party in this litigation and award reasonable attorney fees, costs and expenses.

K.      For such other and further relief, at law or in equity, to which the Plaintiffs and other persons similarly situated may be justly entitled.

Dated: February 21, 2025

LAW OFFICES OF JAMES E. BAHAMONDE, P.C.

X_____

JAMES E. BAHAMONDE, ESQ.
Attorney for the Plaintiff(s)
Tel:  (646) 290-8258
Fax: (646) 435-4376
E-mail:  James@CivilRightsNY.com